

FILED
IN THIS OFFICE
JUN - 8 2026
Clerk U.S. District Court
Greensboro, NC
BY

## U.S. District Court
## for the Middle District of
## North Carolina

**Patrick-Joseph Groulx**

Plaintiff,

v.

**SYNGENTA CORPORATION** (Asset of China' Military)

**SYNGENTA CROP PROTECTION, LLC** (Asset of China's Military)

Defendants.

Case Number: **1: 26CV539**

JURY TRIAL DEMANDED PURSUANT

TO THE SEVENTH AMENDMENT

Patrick-Joseph: Groulx (P00000)
In Propria Persona
2070 Houlihan Road
Saginaw Michigan 48601
989 860-2550
4708nogardnep@gmail.com

/

## COMPLAINT

Plaintiff, Patrick Joseph Groulx, complaining of the Defendants, alleges and shows

unto the Court as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because

there is complete diversity of citizenship between the Plaintiff and the Defendants

and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

2. This Court has personal jurisdiction over both Defendants because their principal place of business and operations are located in Greensboro, Guilford County, North Carolina.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

4. Plaintiff Patrick Joseph Groulx owns property at 2070 Houlihan Road, Saginaw, Michigan 48601 (the site of exposure).

5. Defendants Syngenta Corporation and Syngenta Crop Protection, LLC (collectively "Syngenta") are Delaware entities authorized to do business in North Carolina. Both Defendants design, manufacture, test, label, market, distribute, and sell the herbicide **Boundary® 6.5 EC** (EPA Reg. No. 100-1162) throughout the United States, including Michigan. Their principal place of business is 410 Swing Road, Greensboro, North Carolina 27409 (mailing: P.O. Box 18300, Greensboro, NC 27419-8300). Their registered agent for service in Michigan is United Agent Group Inc., 28175 Haggerty Road, Novi, MI 48377.

## FACTUAL ALLEGATIONS

6. Syngenta manufactures and sells Boundary® 6.5 EC, an emulsifiable-concentrate herbicide containing 58.2% S-metolachlor and 13.8% metribuzin.

7. On May 19, 2019, at approximately 10:30 a.m., Plaintiff was directly exposed to Boundary® 6.5 EC when Nutrien Ag Solutions (hired by or acting for PM Farms LLC on the property immediately north of Plaintiff's residence) traveled north to south at approximately 30 mph with a boom sprayer. At that time the wind was traveling from north to south at 6 mph NNW, causing visible chemical drifts approximately 40 feet high that traveled approximately 100 feet south onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. Plaintiff had no knowledge of the specific long-term dangers posed by the product.

8. Syngenta failed to provide adequate warnings, instructions, or precautions on the product label, Safety Data Sheet (SDS), or marketing materials regarding the risk of permanent neurological damage, gastrointestinal nerve injury, skin cancer, cognitive impairment, chronic pain, erectile dysfunction (ED), blood in seminal fluid, severe blistering allergic reactions, and recurring cysts — especially from drift or residential-adjacent exposure.

9. Syngenta knew or should have known (through its own testing, adverse-event reports, scientific literature, and internal documents) that S-metolachlor and metribuzin can cause neurotoxicity, carcinogenicity, endocrine disruption, and

permanent nerve damage, yet deliberately failed to amend or strengthen the label **and the SDS** despite this knowledge.

10. As a direct and proximate result of the exposure:

    a. Plaintiff immediately suffered erectile dysfunction for two weeks, followed by blood in his seminal (orgasmic) fluids for three days;

    b. Plaintiff began vomiting 25% of food and 75% of food was diarrhea about two weeks after exposure, causing a loss of severe weight at 185 lbs. to 135 lbs.

    c. Thirty days later Plaintiff suffered a severe allergic reaction that blistered extremely badly;

    d. Plaintiff suffered severe, chronic pain that persisted until 2024;

    e. Plaintiff's thinking and cognitive function were grossly distorted;

    f. Plaintiff was discovered with skin cancer in 2024/2025;

    g. Plaintiff suffered permanent injury to the nerves of the gastrointestinal tract, discovered in late 2025/early 2026;

    h. Plaintiff suffered permanent nerve damage to the right and left arms, discovered in late 2025/early 2026; and

    i. Recurring cysts continue to appear in the areas of skin exposed to Boundary® 6.5 EC.

    j. Plaintiff was not able to work as a private tutor since 2019 and has lost his income of $100.00 per hour of 25 hours a week.

k. Plaintiff had to spend money on gas to see doctors traveling back and forth from Saginaw County to Ann arbor putting wear and tear on his vehicle and gas and oil expenses

l. Plaintiff household has to pay out each month in food expense of $800 just for protein for the Plaintiff causing a severe financial burden

11. These injuries are permanent and have caused Plaintiff substantial medical expenses, lost wages, loss of enjoyment of life, and emotional distress.

12. Syngenta's conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's health and safety.

## NATURE OF THE ALLEGATIONS

13. This is a set of seven overlapping, progressively escalating companion claims in what appears to be a pro se or specially drafted civil complaint against Syngenta Crop Protection, LLC (Greensboro, NC operating entity – 70% apportioned responsibility) and Syngenta Corporation (Delaware parent – 30%). All seven counts arise from the exact same May 19, 2019 incident: off-target drift of Boundary® 6.5 EC (S-metolachlor + metribuzin pre-emergence herbicide) from a commercial boom sprayer on neighboring farmland in Saginaw, Michigan. The plaintiff alleges a visible 40-foot-high chemical plume (under 6 mph NNW wind at 10:30 a.m. from a 30 mph north-to-south pass) drifted 100 feet onto his property at

2070 Houlihan Road, "violently assaulting," enveloping, and drenching him while contaminating his land.

14. The core "chained tort" theory is identical across all counts: actual fraud / fraudulent concealment (pled with Rule 9(b) particularity) → malice (conscious, profit-driven disregard for human life) → personal injury / product liability. Syngenta is accused of deliberately misrepresenting on the May 2019 amended EPA label, every SDS (including the March 31, 2023 version), product containers, and marketing materials that the only risks were minor and temporary ("temporary eye injury," "harmful if absorbed through skin," possible skin sensitization). They allegedly concealed far graver permanent effects, plus the product's alleged partial creation by China's military and both defendants' ownership/control by Chinese military-linked state-owned enterprises (post-2017 ChemChina acquisition). Even absent intent, negligent/gross negligent misrepresentation is pled as a fallback. Later counts add civil conspiracy, breach of implied warranties, chemical trespass, private nuisance, and negligent design/design defect as additional vehicles for the same facts.

15. **Shared Allegations & Elements Across All Seven Counts**

    a. Concealed Risks & Facts: Permanent neurotoxicity, bilateral arm nerve damage, gastrointestinal nerve destruction (lifelong vomiting/diarrhea/incontinence — including 12+ daily vomits and 15+ daily diarrheas in damages justifications),

skin cancer (discovered 2024/2025) plus non-Hodgkin lymphoma, erectile dysfunction with blood in seminal fluid, recurring cysts, cognitive distortion, chronic pain, insomnia (15 min/night sleep), loss of bodily control and sexual function, public incontinence humiliation, incurability of effects, specific causes of death (respiratory/organ failure, cancer), true EPA classification (regulated pesticide, not "mere herbicide"), specific drift-mitigation measures, Chinese military-creation/ownership ties, and the common-law maxim "Necessitas non habet legem" ("Necessity has no law").

b. Proximate Causation & Injuries: Identical drift facts plus the full scope of permanent injuries listed above, secondary trauma from doctors who allegedly dismissed the plaintiff and filed false mental-health reports, and the distinct "no-help" injury caused by the ongoing concealment (Syngenta provided zero medical guidance, comprehension assistance, or mitigation information).

c. Property & Design Torts (Counts V–VII): Chemical Trespass (Count V: unauthorized physical invasion), Private Nuisance (Count VI: unreasonable ongoing interference with land use and enjoyment due to permanent contamination), and Negligent Design / Design Defect (Count VII: product engineered to be inherently too volatile and drift-prone, "never engineered for safe use on or near Plaintiff's trees, on Plaintiff personally, or in public

airspace," and "partially created by China's military with no regard for Plaintiff's well-being").

d. Statutory Violations: FIFRA (7 U.S.C. § 136j et seq.), EPA regs (40 C.F.R. § 156.10), North Carolina unfair trade practices and pesticide statutes, Michigan Consumer Protection Act, and others.

e. Tolling & Timeliness: Claims are timely via insanity/disability tolling, discovery rule, continuing-tort/continuing-violation doctrine (strengthened by ongoing nuisance and contamination), and latent injuries (cancer 2024/2025; permanent nerve damage manifesting late 2025/early 2026) due to "five years of mental derangement."

f. FIFRA Preemption Survival: All counts (with Counts V and VII containing nearly identical, extremely detailed multi-paragraph anticipatory briefs citing Bates v. Dow Agrosciences LLC, 544 U.S. 431 (2005) at length and noting that the Supreme Court "expressly listed 'defective design' as one of the surviving claims") explicitly rest on "active deception, concealment, and coordinated conspiracy" plus physical invasion, unreasonable interference, or defective formulation — not a mere demand for different labeling. Count VI adds a concise supporting argument. Both detailed briefs cite post-Bates drift cases and distinguish the pending Supreme Court case Monsanto Co. v. Durnell (No. 24-

1068, cert. granted 2026) as irrelevant to design-defect or pure physical-invasion claims.

g. Legal Framing: Cite Twombly/Iqbal, Rule 9(b), specific NC/MI/federal statutes, and Michigan UCC (Count IV) to survive early dismissal.

16. **Count I Specifics** Framed primarily under North Carolina product-liability law (N.C. Gen. Stat. Chapter 99B) plus common law, Michigan, and federal law (chosen because the labeling team is in Greensboro). Negligent misrepresentation is the fallback. Fraud/malice supplies the elements of an unreasonably dangerous product (defective labeling).

17. **Count II Specifics** Pled under common law, Michigan law, and North Carolina law. Adds "Gross Negligent Misrepresentation" and treats Personal Injury as an Independent Tort. The concealment itself is a separate injury. Escalates injunctive relief to include a court order requiring Syngenta to personally provide lifelong medical guidance and comprehension assistance to the plaintiff.

18. **Count III Specifics** Makes Civil Conspiracy the central mechanism. The two defendants allegedly "knowingly entered into and executed" a coordinated scheme formed no later than the 2017 ChemChina acquisition to suppress risks, misclassify the product as a mere "herbicide" to evade pesticide rules, hide military ownership/control, and refuse amendments. This ongoing conspiracy reframes the drift as a "violent assault." Original negligence is pled as a fallback.

19. **Count IV Specifics** Copies large portions of Count III and layers on Breach of Implied Warranty of Merchantability (MCL 440.2314) and Fitness for Particular Purpose (MCL 440.2315) under Michigan's Uniform Commercial Code. The same fraud/malice/conspiracy proves the product was unmerchantable and unfit for safe use (toxic to humans, pollinators, trees, and crops; causes incurable cancers/deaths; knowingly mislabeled).

20. **Count V Specifics** Centers on Chemical Trespass (pesticide-drift trespass) as the lead theory while chaining it to all prior elements. The drift is framed as a deliberate, unauthorized physical invasion of land and body caused by the product's known volatility and the defendants' concealment. Includes a sophisticated multi-paragraph FIFRA preemption defense and constitutional punitive-damages analysis.

21. **Count VI Specifics** Centers on Private Nuisance as the direct counterpart to Count V. The drift (and ongoing permanent contamination plus continued concealment) is reframed as unreasonable and substantial interference with the plaintiff's use and enjoyment of his land. Adds explicit "annualized × 35 years" math to justify compensatory damages and supports continuing-violation tolling.

22. **Count VII Specifics (product-design-defect escalation)** Centers on Negligent Design / Design Defect. The product was "negligently designed" to be highly volatile and drift-prone, rendering it "unreasonably dangerous for foreseeable

residential use." Includes an extremely detailed FIFRA preemption brief (nearly identical to Count V) that emphasizes Bates expressly preserves design-defect claims. Ties the alleged military creation into the "unreasonably dangerous" formulation. Negligence is pled as a fallback.

23. **Damages Sought (Joint & Several, 70/30 Apportionment)** Count I (baseline): $25M compensatory + $15M personal injury + $10M emotional distress + fraud multiplier ($2\times$ compensatory + 3% compounded interest from May 19, 2019) + $10M punitive. Total demand exceeds $66 million plus fees/costs. Count II (escalated): $52.5M compensatory + $100M restitution/unjust enrichment + fraud damages ($2\times$ compensatory ($105M) or treble up to $157.5M) + 3% interest + $10M+ punitive. Total demand exceeds $167 million plus fees/costs. Counts III–VII (massive escalation — identical base figures):

a. Compensatory Economic + Non-Economic: $155,700,000 (itemized examples: CRISPR $15M, stem-cell $5M, specialized care $16.5M, lost $100/hr tutoring wages $6M, pain/suffering/emotional $12M, etc.; Counts VI–VII add explicit "annualized $\times$ 35 years" math, e.g., CRISPR = ~$428,571/year $\times$ 35; lost wages = ~$171,429/year $\times$ 35; non-economic as $2\times$ multiplier on certain economic damages) — fully justified by the specific, traceable economic and non-economic losses detailed in paragraph 10.

b.  Restitution/Unjust Enrichment: $100,000,000 (proportionate share of "billions in profits"). • Fraud Damages: 2× compensatory = $311,400,000 + 3% compounded monthly interest from May 19, 2019 (or more under NC/MI statutes).

c.  Punitive/Exemplary: $15M (Counts III–IV) or $25M (Counts V–VII) — justified by "shocking, outrageous, and depraved" conspiracy, warranty breaches, physical invasion, ongoing interference, and defective design (with full BMW v. Gore / State Farm v. Campbell analysis in V–VII).

d.  Statutory penalties per violation.

e.  Injunctive Relief (extraordinary and escalating): immediate label/SDS amendments disclosing everything (military ties, specific cancer mechanisms, death pathways, necessity doctrine, mitigation measures, incurability) + court-ordered personal lifelong medical guidance and comprehension assistance to Plaintiff + (Counts V–VI) cessation of all sales of Boundary® 6.5 EC until full compliance + (Count VII) reformulation or cessation of any product not designed for safe use near residential trees, persons, or public airspace.

24. **Overall Nature in Plain English** Counts I–VII are strategic, layered theories designed to

    a. survive early dismissal and FIFRA preemption by centering on intentional fraud, concealment, civil conspiracy, breach of implied warranties, chemical trespass, private nuisance, and now negligent design/design defect,

    b. bootstrap malice into massive punitive damages, statutory multipliers, and restitution of corporate profits, and

    c. force extraordinary injunctive relief — rewriting every label and SDS in America to disclose all risks, incurability, specific cancers/deaths and their mechanisms, drift-mitigation measures, the Chinese military ties, and the "necessity has no law" doctrine — while also requiring Syngenta to personally provide the plaintiff lifelong medical help, cease all sales (Counts V–VI), and reformulate or cease any unsafe product (Count VII).

25. In the plaintiff's words (paraphrased across the counts): "Syngenta not only lied on the label and SDS about how dangerous Boundary 6.5 EC really is and hid who owns the company — they actively conspired together since the 2017 Chinese takeover to misclassify it, suppress the truth, sell an unmerchantable and unfit product they deliberately engineered to be ultra-volatile and drift-prone (with Chinese military roots and zero regard for homeowners), and let it 'violently assault' me through chemical trespass, ongoing private nuisance, and defective

design that physically invaded my land and body and permanently interferes with my right to live peacefully on my own property. Their fraud, gross negligence, malice, conspiracy, warranty breaches, trespass, nuisance, and design defect prove they owe me hundreds of millions, must rewrite every label and SDS to admit the military connection and incurable harms, must personally assist me medically for the rest of my life, and must stop selling or reformulate this product entirely until they fix everything."

26. The septuple-count approach throws every possible legal theory at the same facts, maximizes recovery options, defeats defenses (including preemptive FIFRA rebuttals that directly invoke Bates' preservation of design-defect claims), and applies maximum pressure on the defendants to disclose both product-safety information and corporate-ownership details while facing potential product-line shutdown or mandatory reformulation. Whether these allegations ultimately hold up in court is a separate question; this is simply the nature and structure of what the plaintiff has pled in the first seven counts.

## IMMUNITY DOES EXIST FOR DEFENDANTS

27. Defendants Are Not Entitled to Any Form of Immunity (FIFRA Preemption, FSIA Sovereign Immunity, or Otherwise) from Counts I through VII

28. Defendants Syngenta Crop Protection, LLC and Syngenta Corporation enjoy no immunity—statutory, regulatory, preemptive, or sovereign—from the claims of

Negligent Design, Private Nuisance, Trespass (Chemical Trespass), Actual Fraud, Fraud, Fraudulent Concealment, Negligent Misrepresentation, Gross Negligent Misrepresentation, Malice, Malicious Intent, Civil Conspiracy, Negligence, Breach of Implied Warranty of Merchantability (MCL 440.2314) and Fitness for Particular Purpose (MCL 440.2315), Product Liability (N.C. Gen. Stat. Chapter 99B and common law), and Personal Injury (including the secondary injury of receiving no medical guidance or comprehension assistance) pled in Counts I through VII under Common Law, Michigan Law, North Carolina Law, and Violations of Applicable Federal Statutes. The allegations in Counts I–VII, which re-allege and incorporate all preceding paragraphs, supply multiple independent bases defeating any such defense as a matter of law.

29. **First**, FIFRA confers no preemption or immunity. These claims survive FIFRA's express preemption clause (7 U.S.C. § 136v(b)) in full because they rest on active deception, concealment, coordinated conspiracy, the product's inherent physical characteristics and defective design, the actual physical invasion of Plaintiff's land and body, and the unreasonable physical interference with use and enjoyment of land—not on any demand for different labeling. This is correct under *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443–48 (2005), *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), and *Titan Ins. Co. v. Hyten*, 491 Mich. 547 (2012). FIFRA bars only state-law labeling "requirements" that are "in addition to or different

from" federal requirements; it does not preempt parallel common-law torts or traditional remedies for physical harm and defective design.

30. Defendants misrepresented on the May 2019 label amendment (authored and submitted from Syngenta Crop Protection, LLC's Greensboro, North Carolina headquarters) and every SDS (including the March 31, 2023 version) that risks were limited to "temporary eye injury," "harmful if absorbed through skin," and possible "skin sensitization." They concealed the exact permanent harms Plaintiff suffered: neurotoxicity, gastrointestinal nerve destruction, bilateral arm nerve damage, skin cancer (discovered 2024/2025) and non-Hodgkin lymphoma (and mechanisms), respiratory/organ failure and cancer mortality (and pathways), incurability of neurotoxicity/endocrine disruption/nerve damage, erectile dysfunction with blood in seminal fluid, delayed blistering, cognitive distortion, recurring cysts, total loss of bodily control, lifelong digestive failure, and the necessity doctrine ("Necessitas non habet legem").

31. As part of a civil conspiracy formed no later than the 2017 ChemChina acquisition, Defendants misclassified the product as a mere "herbicide" to evade pesticide rules, hid its military-linked Chinese state-owned ownership, and omitted drift-mitigation measures. These acts establish breach of implied warranties of merchantability and fitness because the product is toxic, causes incurable cancers and deaths, and is unfit for residential-adjacent use. Defendants negligently

designed it to be highly volatile and drift-prone. This fraud, conspiracy, malice, and negligence directly establish chemical trespass and private nuisance.

32. On May 19, 2019, at approximately 10:30 a.m., Nutrien Ag Solutions' boom sprayer released a visible 40-foot-high plume of Boundary® 6.5 EC under 6 mph NNW wind that drifted 100 feet southward, drenching Plaintiff and his property at 2070 Houlihan Road, Saginaw, Michigan. The nuisance continues through permanent contamination and ongoing concealment. These claims rest on objective physical evidence—the plume, drift distance, and product's inherent characteristics—independent of label language, and are preserved under *Bates* and post-*Bates* authority. The pending *Monsanto Co. v. Durnell* (No. 24-1068) review is limited to label-based failure-to-warn claims and inapplicable here.

33. This conduct also creates the additional personal injury of Defendants providing no medical guidance or comprehension assistance, exacerbating all harms. The exposure is a violent chemical assault. Regulatory approval through fraud supplies no safe harbor.

34. **Second**, no Foreign Sovereign Immunities Act (FSIA) immunity applies. Even assuming the concealed military-linked Chinese state-owned ownership could implicate 28 U.S.C. §§ 1602 *et seq.*, immunity is defeated by the commercial-activity exception (28 U.S.C. § 1605(a)(2))—the design, manufacture, fraudulent labeling, and nationwide sale of Boundary® 6.5 EC for profit, culminating in the

drift assault, is quintessential U.S. commercial activity with direct effect here. More decisively, Defendants waived any immunity by repeatedly suing as plaintiffs in U.S. courts on agribusiness matters. They cannot wield the courts as both sword and shield.

35. **Third**, the chained elements of negligent design → private nuisance → chemical trespass → fraud → civil conspiracy → malicious intent/malice → (gross) negligent misrepresentation → negligence → breach of implied warranties → product liability and personal injury defeat any residual common-law, equitable, or regulatory-compliance defense. The particularized pleading (exact dates, roles with 70%/30% apportionment, wind/applicator/drift details, violent-assault facts, ongoing nuisance, and full injury catalog) satisfies *Twombly/Iqbal* and Rule 9(b). The intentional, profit-driven concealment after the 2017 ChemChina acquisition, refusal to amend despite knowledge of incurable harms, and conscious disregard for human life are immunized by no statute or doctrine. Violations of FIFRA, N.C. Gen. Stat. §§ 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 *et seq.*, and the Michigan Consumer Protection Act (MCL 445.901 *et seq.*) provide independent liability and enhanced damages.

36. In short, the allegations in Counts I through VII render any immunity defense legally unavailable. Defendants are fully liable, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), for all damages (including massive compensatory, fraud, restitution, exemplary/punitive, and statutory amounts) and injunctive relief sought, including immediate label/SDS amendments, medical guidance and comprehension assistance to Plaintiff, reformulation or cessation of unsafe products, and cessation of all Boundary® 6.5 EC sales until full compliance. Discovery and a jury trial on the merits are required. Justice demands nothing less.

**ENTITLEMENT CLAUSE**

37. Plaintiff is entitled to the full relief demanded in the Prayer for Relief because the unchallenged, particularized allegations in Counts I–VII—incorporating all preceding paragraphs and satisfying the elements of the entitlement clause doctrine—establish every element of the chained torts of Actual Fraud, Fraud, Fraudulent Concealment, Negligent Misrepresentation, Gross Negligent Misrepresentation, Civil Conspiracy, Malicious Intent, Malice, Negligence, Chemical Trespass (Trespass), Breach of Implied Warranty of Merchantability and Fitness for Use, Private Nuisance, Negligent Design, and Personal Injury as an independent tort (pled with Rule 9(b) particularity under the 5W1H framework). These torts directly and redundantly prove Product Liability under N.C. Gen. Stat.

Chapter 99B and common law, as well as independent Personal Injury under common law, Michigan law, and North Carolina law. Under the controlling precedents of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny, the Court must accept all well-pleaded factual allegations as true, disregard mere labels and conclusions, and determine whether the complaint states a plausible claim for relief. Here, the complaint far exceeds that threshold: it supplies an exhaustive, non-conclusory factual narrative—including the exact wording of the May 2019 label/SDS misrepresentations and omissions, the precise 2017 ChemChina acquisition date and Defendants' resulting knowledge, the minute-by-minute mechanics of the 40-foot-high visible plume and 100-foot southward drift on May 19, 2019 at 10:30 a.m. under 6 mph NNW wind, the catalogued permanent injuries with their biological mechanisms, and Defendants' profit-driven, malicious refusal to amend despite actual knowledge—that raises the right to relief "above the speculative level" (*Twombly*, 550 U.S. at 555) and permits the Court to draw the strong, reasonable inference that Defendants are liable for each and every chained tort. The allegations contain "sufficient factual matter" to state claims that are not merely possible, but "plausible on [their] face" (*Iqbal*, 556 U.S. at 678), thereby satisfying the entitlement clause doctrine and entitling Plaintiff to the precise

compensatory, punitive, statutory, and injunctive relief demanded in the Prayer for Relief.

38. Defendants Syngenta Crop Protection, LLC (North Carolina-based designer, formulator, manufacturer, and distributor) and Syngenta Corporation (Delaware-formed owner) knowingly entered a civil conspiracy no later than the 2017 ChemChina acquisition. Pursuant thereto, they negligently designed Boundary® 6.5 EC to be highly volatile and drift-prone, manufactured and distributed it with knowledge of the defect, and misrepresented on the May 2019 label and every SDS (including March 31, 2023) that risks were only minor and temporary while concealing permanent risks of neurotoxicity, nerve damage, skin cancer, non-Hodgkin lymphoma, erectile dysfunction, cognitive distortion, recurring cysts, incurability, specific cancer mechanisms and causes of death, Chinese military ownership and control, military-linked origins, true EPA pesticide status (not mere "herbicide"), the necessity doctrine, and drift-mitigation measures.

39. This profit-driven, malicious suppression breached the duty of accurate, complete disclosure. Plaintiff justifiably relied on the omissions while living adjacent to active farmland. Defendants' refusal to amend despite knowledge since 2017 supplies conscious disregard for human life, malice, and malicious intent rendering the product unreasonably dangerous. Even absent intent, the conduct is original negligence.

40. The same fraud-induced malice and negligence directly establish Chemical Trespass (unauthorized invasion of land and body from omitted volatility and drift risks), Private Nuisance (unreasonable interference with land use and enjoyment, including contamination), Negligent Design (product never engineered for safe residential use near trees, persons, or airspace), and breach of implied warranties of merchantability (MCL 440.2314) and fitness (MCL 440.2315) because the product is toxic to humans, pollinators, trees, and crops; causes incurable cancers and death through known mechanisms; has no cure; and was mislabeled to evade regulations.

41. These elements—civil conspiracy, malicious intent, gross negligence, warranty breaches, chemical trespass, private nuisance, negligent design, and ongoing concealment—directly and redundantly establish every element of Personal Injury as an independent tort:

   a. duty to design a safe product and provide accurate disclosures regarding risks, incurability, EPA classification, origins, necessity doctrine, invasion prevention, and non-interference with land enjoyment;

   b. breach via defective design, misrepresentations, omissions, and refusal;

   c. proximate causation; and

   d. damages, including lack of medical guidance.

42. The chained conduct proximately caused the May 19, 2019 exposure (Nutrien's boom sprayer releasing Boundary® 6.5 EC in a 40-foot-high plume under 6 mph

NNW wind at 10:30 a.m. that drifted 100 feet to drench Plaintiff at 2070 Houlihan Road, Saginaw, MI 48601) and the permanent injuries alleged. It violates FIFRA (7 U.S.C. §§ 136j, 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. §§ 75-1.1 et seq., Chapter 99B, and the Michigan Consumer Protection Act (MCL 445.901 et seq.). All claims survive FIFRA preemption as they arise from deception, conspiracy, physical torts, and design defects (preserved under *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)) rather than label demands, and are timely under mental derangement, insanity/disability tolling, discovery rule, continuing-tort doctrine, and equitable tolling.

43. Therefore, Plaintiff is entitled—jointly and severally against Syngenta Crop Protection, LLC (70%) and Syngenta Corporation (30%)—to the compensatory, non-economic, reliance, restitution, fraud-multiplier ($2\times$ compensatory plus 3% compounded interest from May 19, 2019, or treble), punitive/exemplary, and statutory damages sought in the Prayer for Relief, plus pre- and post-judgment interest, costs, expert and attorney fees, and injunctive relief requiring immediate label/SDS amendments disclosing all permanent risks, military ties, incurability, necessity doctrine, cancers/deaths/mechanisms, and full EPA classification; orders for medical guidance and comprehension assistance; cessation of sales until compliance; and reformulation or cessation of any product not designed for safe residential use, as justice demands nothing less.

# COUNT I

## Actual Fraud, Fraudulent Concealment, Negligent Misrepresentation, Malice, and Personal Injury (Product Liability under N.C. Gen. Stat. Chapter 99B and Common Law, and Violations of All Applicable Federal, State, and CFR Statutes)

44. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The specific, non-conclusory facts — exact dates, wind speed, applicator speed, drift height and distance, label amendment timing, SDS omissions, each Defendant's precise role, and the detailed personal injuries — make liability for every tort pled below not merely conceivable but contextually probable.

46. Defendants Syngenta Crop Protection, LLC (through its regulatory affairs officers and labeling team in Greensboro, North Carolina) and Syngenta Corporation (through its corporate oversight officers) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS, every product container, every distributor/applicator communication (including to Nutrien Ag Solutions), and all marketing materials submitted to the EPA.

47. Actual Fraud (five elements under North Carolina common law) directly satisfies every element of Fraudulent Concealment (as a species of fraud):

a. False representation or concealment of a material fact: Defendants affirmatively represented on the May 2019 label and every SDS that the only risks were "temporary eye injury," "harmful if absorbed through skin," and possible "skin sensitization," while deliberately concealing the permanent risks of neurotoxicity, gastrointestinal nerve destruction, bilateral arm nerve damage, skin cancer, erectile dysfunction, blood in seminal fluid, delayed blistering, cognitive distortion, and recurring cysts (as detailed in paragraphs 1–43).

b. Representation or concealment reasonably calculated to deceive: The omissions and misrepresentations appeared on every label, SDS, and marketing document immediately before Plaintiff's exposure.

c. Made with intent to deceive: Defendants possessed internal studies showing the exact permanent injuries Plaintiff later suffered yet refused to update the label or SDS.

d. Which did in fact deceive: Plaintiff justifiably relied on the false representation that the product was safe when used as directed.

e. Resulting in damages: The reliance caused the severe, permanent personal injuries detailed in subparagraph 51(f) below.

48. Because the same affirmative misrepresentations and omissions occurred while Defendants had a regulatory and common-law duty to disclose, the conduct also satisfies every element of Fraudulent Concealment element-by-element.

49. The same conduct directly satisfies every element of Negligent Misrepresentation under North Carolina law (even absent intent):

   a. Defendants supplied false information (the incomplete May 2019 label/SDS) in the course of their business with knowledge that distributors, applicators, and end-users (including Plaintiff) would rely on it;

   b. The information was false;

   c. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information;

   d. Plaintiff actually and justifiably relied on the false information; and

   e. The reliance proximately caused Plaintiff's pecuniary and personal-injury damages (detailed in subparagraphs 51(d)–(f) below).

50. The conduct establishing Actual Fraud, Fraudulent Concealment, and Negligent Misrepresentation directly establishes every element of Malice under N.C. Gen. Stat. § 1D-5.

51. The chained torts further establish every element of Personal Injury / Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

a. Duty: Defendants owed a duty to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks, proper EPA pesticide classification, and corporate origins (regulatory duty under FIFRA plus common-law duty).

b. Breach: The intentional misrepresentations, omissions, and negligent failure to exercise reasonable care in the May 2019 label/SDS (plus ongoing refusal to amend) constitute an unreasonable failure to warn under § 99B-5.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 exposure and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The fraud/malice elements supply the "knew or should have known" knowledge component of § 99B-5 and render the product unreasonably dangerous; the negligent-misrepresentation elements supply the ordinary-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS (70% primary responsibility) and Syngenta Corporation's supervisory concealment and failure to correct it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at

30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures would have prevented.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. immediate erectile dysfunction (two weeks) followed by blood in seminal fluid (three days);

2. severe blistering allergic reaction (30 days later);

3. chronic pain until 2024;

4. grossly distorted thinking and cognition;

5. skin cancer discovered 2024/2025 in exposed areas;

6. permanent gastrointestinal tract nerve damage (lifelong digestive failure, vomiting 12+ times/day and diarrhea 15+ times/day 2019–2024, incontinence, aluminum/tin-triggered episodes);

7. permanent bilateral arm nerve damage (weakness and pain);

8. recurring cysts in exposed skin;

9. total loss of bodily control (repeated public/private defecation and urination on himself);

10. only 15 minutes of sleep per night due to unrelenting pain;

11. complete loss of clear vision and inability to walk on multiple days;

12. secondary emotional trauma from medical providers who laughed, fabricated 16 false mental-disorder allegations, misled a probate judge, and instructed other physicians not to treat Plaintiff; and

13. permanent destruction of sexual function, digestive system, cognitive clarity, physical independence, $100/hour tutoring career, and enjoyment of life.

g. The conduct set forth in paragraphs 47–50 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

52. As a direct and proximate result of the chained torts, Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative damages traceable to the injuries in subparagraph 51(f):

a. Compensatory economic damages: $25,000,000 ($15M CRISPR interventions, $5M stem-cell treatments, $5M future lost income/earning capacity).

b. Non-economic personal injury damages: $15,000,000.

c. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages: $10,000,000.

d. Reliance damages: $1,000,000.

e. Restitution damages: $5,000,000.

f. Fraud damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

g. Punitive and exemplary damages: $10,000,000 (Syngenta Crop Protection, LLC — $7M; Syngenta Corporation — $3M), justified by reprehensibility, ratio to compensatory damages, harm inflicted, and deterrence needs.

h. Statutory damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina statute; $26,000 per Michigan statute.

53. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and secondary medical betrayal (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

54. Prayer for Relief

    a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

      1. Compensatory damages of $25,000,000 (or greater as proven at trial), as established in paragraphs 51 and 52 above.

      2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 51(f) above.

      3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $10,000,000 (or greater as proven at trial), as established in subparagraph 51(f) above.

      4. Reliance damages of $1,000,000, as established in paragraphs 47(d) and 49(d)–(e) above.

      5. Restitution damages of $5,000,000, as established in paragraph 52(e) above. Fraud damages at two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019, as established in paragraphs 47–49 above.

6. Punitive and exemplary damages of $10,000,000 (or greater as proven at trial) (Syngenta Crop Protection, LLC — $7M; Syngenta Corporation — $3M), as established in paragraph 50 above.

7. Statutory damages as calculated in paragraph 52(h), as established in subparagraph 51(g) above.

8. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019, as established in paragraph 52(f) and the continuing-tort doctrine.

9. Costs, expert fees, and attorney fees as allowed by law.

10. Injunctive relief requiring immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, and full EPA pesticide classification.

11. Such other and further relief as the Court deems just and proper.

## COUNT II

**Fraud, Fraudulent Concealment, Gross Negligent Misrepresentation, Malice, and Personal Injury (Under Common Law, Michigan Law, North Carolina Law, and Violations of Applicable Federal Statutes)**

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

56. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

662, 678–79 (2009). The specific, non-conclusory facts supplied herein make liability not merely conceivable but contextually probable.

57. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan Road, Saginaw, Michigan 48601), every product container, every distributor/applicator communication, and all marketing materials submitted to the EPA.

58. Fraud (five elements under North Carolina and Michigan common law) directly satisfies every element of Fraudulent Concealment (as a species of fraud):

   a. False representation or concealment of a material fact: Defendants affirmatively represented on the May 2019 label and every SDS that the only risks were minor and temporary while deliberately concealing permanent and life-altering risks of specific cancers (including skin cancer and non-Hodgkin lymphoma), specific causes of death (respiratory failure, organ failure, cancer mortality),

Chinese military ownership and control, the product's true status as an EPA-regulated pesticide rather than a mere "herbicide," incurability of the resulting neurotoxicity, endocrine disruption, and nerve damage, the common-law necessity doctrine ("Necessitas non habet legem"), and any specific drift-mitigation measures (as detailed in paragraphs 1–43).

b.  Representation or concealment reasonably calculated to deceive: The omissions and misrepresentations appeared on every label, SDS, and marketing document immediately before Plaintiff's exposure.

c.  Made with knowledge of falsity and intent to deceive: Defendants possessed internal studies showing the exact permanent injuries Plaintiff later suffered yet refused to update the label or SDS.

d.  Which did in fact deceive: Plaintiff justifiably relied on the false representation that the product was safe when used as directed.

e.  Resulting in damages: The reliance caused the severe, permanent personal injuries detailed in subparagraph 62(f) below.

59. Because the same affirmative misrepresentations and omissions were made when Defendants had a regulatory and common-law duty to disclose (EPA labeling requirements and knowledge of catastrophic harms), the conduct also satisfies every element of Fraudulent Concealment element-by-element.

60. The same conduct directly satisfies every element of Gross Negligent Misrepresentation under North Carolina and Michigan law (even absent intent):

a. Defendants supplied false information (the incomplete May 2019 label/SDS) in the course of their business/profession with knowledge that distributors, applicators, and end-users (including Plaintiff) would rely on it;

b. The information was false;

c. Defendants acted with gross negligence and reckless indifference to Plaintiff's safety by failing to exercise even slight care or competence in obtaining or communicating the information (they knew of the internal studies but omitted the permanent risks, specific cancers, causes of death, incurability, necessity doctrine, drift-mitigation measures, misclassified the product as a mere "herbicide," and concealed its military ownership and control);

d. Plaintiff actually and justifiably relied on the false information; and

e. The reliance proximately caused Plaintiff's pecuniary and personal-injury damages (detailed in subparagraphs 62(d)–(f) below).

61. The conduct establishing Fraud, Fraudulent Concealment, and Gross Negligent Misrepresentation directly establishes every element of Malice (N.C. Gen. Stat. § 1D-5 and Michigan common law). The intentional misrepresentations, omissions, knowledge of the precise permanent injuries and incurability, malicious refusal to

amend the label/SDS despite internal studies, profit-driven motive, concealment of military ownership and control, and reckless indifference demonstrate

a. a sense of personal ill will or deliberate disregard for human life and

b. willful and wanton conduct in conscious or reckless disregard for the rights and safety of Plaintiff and the public.

c. These facts satisfy the statutory and common-law definition of Malice element-by-element and supply the aggravating factor required for punitive damages.

62. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

a. Duty: Defendants owed a duty to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers, causes of death, incurability, necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins (regulatory duty under FIFRA plus common-law duty).

b. Breach: The chained intentional misrepresentations, omissions, gross negligence, and malicious refusal to amend the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 exposure and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The fraud/malice elements supply the "knew or should have known" knowledge component of § 99B-5 and render the product unreasonably dangerous; the gross-negligent-misrepresentation elements supply the ordinary/gross-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS (70% primary responsibility) and Syngenta Corporation's supervisory concealment and malicious refusal to amend it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical

help, guidance, or comprehension assistance whatsoever, compounding the harm.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. immediate erectile dysfunction (two weeks) followed by blood in seminal fluid (three days);

2. severe blistering allergic reaction (30 days later);

3. chronic pain until 2024 and beyond;

4. grossly distorted thinking and cognition;

5. skin cancer discovered 2024/2025 in exposed areas;

6. permanent gastrointestinal tract nerve damage (lifelong digestive failure, vomiting 12+ times/day and diarrhea 15+ times/day 2019–2024, incontinence, aluminum/tin-triggered episodes);

7. permanent bilateral arm nerve damage (weakness and pain);

8. recurring cysts in exposed skin;

9. total loss of bodily control (repeated public/private defecation and urination on himself);

10. only 15 minutes of sleep per night due to unrelenting pain;

11. complete loss of clear vision and inability to walk on multiple days;

12. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures;

13. secondary emotional trauma from medical providers who laughed, fabricated false allegations, and refused treatment; and

14. permanent destruction of sexual function, digestive system, cognitive clarity, physical independence, $100/hour tutoring career, and enjoyment of life.

g. The conduct set forth in paragraphs 58–61 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

63. As a direct and proximate result of the chained torts, Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative damages traceable to the injuries in subparagraph 62(f):

a. Compensatory economic damages: $52,500,000 ($15M CRISPR interventions, $5M stem-cell treatments, $7.2M GI/pain/nutritional care, $8.5M arm nerve/allergic/cyst impairment, $5.8M lost wages/earning capacity, $1M reliance damages, $10M non-economic pain/suffering/emotional distress).

b. Restitution for unjust enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

c. Fraud damages: two times (2×) all compensatory damages ($105,000,000) plus fraud interest at 3% compounded monthly from May 19, 2019 (or treble damages of $157,500,000 under N.C. Gen. Stat. § 75-16 or MCL 445.911 if applied).

d. Punitive and exemplary damages: $10,000,000 (or greater), justified by the malicious refusal to amend the SDS, concealment of military ties/incurability/necessity doctrine, and need for deterrence.

e. Statutory damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

64. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

65. Prayer for Relief

    a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

      1. Compensatory damages of $52,500,000 (or greater as proven at trial), as established in paragraphs 62 and 63 above.

      2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 62(f) above.

      3. Emotional distress and related non-economic damages of $10,000,000 (or greater as proven at trial), as established in subparagraph 62(f) above.

      4. Reliance damages of $1,000,000, as established in paragraphs 58(d) and 60(d)–(e) above.

      5. Restitution damages of $100,000,000, as established in paragraph 63(b) above.

      6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019 (or treble damages if applied), as established in paragraphs 58–60 above.

      7. Punitive and exemplary damages of $10,000,000 (or greater as proven at trial), as established in paragraph 61 above.

8. Statutory damages as calculated in paragraph 63(e), as established in subparagraph 62(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019, as established in paragraph 63(c) and the continuing-tort doctrine.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Injunctive relief requiring immediate label and SDS amendments disclosing all permanent risks, specific cancers and causes of death, military-creation and ownership ties, incurability, the necessity doctrine, specific drift-mitigation measures, and full EPA pesticide classification, plus an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff.

12. Such other and further relief as the Court deems just and proper.

## COUNT III

**Fraud, Civil Conspiracy, Malicious Intent, Negligence, and Personal Injury (Under Common Law, Michigan Law, North Carolina Law, and Violations of Applicable Federal Statutes)**

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

67. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

662, 678–79 (2009). The specific, non-conclusory facts supplied herein make liability not merely conceivable but contextually probable.

68. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan Road, Saginaw, Michigan 48601), every product container, every distributor/applicator communication, and all marketing materials submitted to the EPA.

69. Fraud (five elements under North Carolina and Michigan common law) directly satisfies and is incorporated into every element of Civil Conspiracy:

   a. False representation or concealment of a material fact: Defendants affirmatively represented on the May 2019 label and every SDS that the only risks were minor and temporary while deliberately concealing permanent and life-altering risks of specific cancers (including skin cancer and non-Hodgkin lymphoma) and their precise biological mechanisms, specific causes of death (respiratory

failure, organ failure, cancer mortality) and their exact physiological pathways, Chinese military ownership and control, the product's true status as an EPA-regulated pesticide rather than a mere "herbicide," incurability of the resulting neurotoxicity, endocrine disruption, and nerve damage, the common-law necessity doctrine ("Necessitas non habet legem"), and any specific drift-mitigation measures (as detailed in paragraphs 1–43).

b. Representation or concealment reasonably calculated to deceive: The omissions and misrepresentations appeared on every label, SDS, and marketing document immediately before Plaintiff's exposure.

c. Made with knowledge of falsity and intent to deceive: Defendants possessed internal studies showing the exact permanent injuries Plaintiff later suffered yet refused to update the label or SDS.

d. Which did in fact deceive: Plaintiff justifiably relied on the false representation that the product was safe when used as directed while living adjacent to active farmland.

e. Resulting in damages: The reliance caused the severe, permanent personal injuries detailed in subparagraph 73(f) below.

70. The Fraud elements above are directly incorporated into Civil Conspiracy. The two Defendants entered into and executed a mutual agreement (formed no later than the 2017 ChemChina acquisition and actively maintained through May 19,

2019 and continuing thereafter) to commit the unlawful acts of fraud and concealment described above. Each Defendant performed overt acts in furtherance of that agreement (Syngenta Crop Protection, LLC through direct authorship and submission of the fraudulent label/SDS, and Syngenta Corporation through supervisory approval, concealment, and refusal to amend).

71. The conduct establishing Fraud and Civil Conspiracy directly establishes every element of Malicious Intent (N.C. Gen. Stat. § 1D-5 and Michigan common law). The intentional misrepresentations, omissions, coordinated agreement to suppress material safety facts, and malicious refusal to amend despite internal knowledge of the catastrophic harms demonstrate conscious and deliberate disregard for human life and willful and wanton conduct.

72. The same conduct further satisfies every element of Negligence (under Michigan and North Carolina common law): a. Defendants owed Plaintiff, as a foreseeable residential neighbor,

   a. duty of reasonable care to provide accurate, complete, and non-misleading safety information, proper classification, and drift-mitigation measures;

   b. Defendants breached that duty through the misrepresentations, omissions, coordinated concealment, and refusal to amend;

   c. The breach was the proximate cause of the exposure and injuries (detailed in subparagraphs 73(e)–(f) below); and

d. Plaintiff suffered the damages set forth in subparagraph 73(f) below. The upstream Fraud, Conspiracy, and Malicious Intent elements supply the actual knowledge that renders the negligence particularly egregious.

73. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

a. Duty: Defendants owed a duty to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers and mechanisms, causes of death and pathways, incurability, necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins.

b. Breach: The chained intentional misrepresentations, omissions, coordinated conspiracy, malicious intent, and negligent failure to exercise reasonable care in the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 exposure and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The fraud/conspiracy/malice elements

supply the "knew or should have known" knowledge component and render the product unreasonably dangerous; the negligence elements supply the ordinary-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS (70% primary responsibility) and Syngenta Corporation's supervisory concealment, malicious agreement, and refusal to amend it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical help, guidance, or comprehension assistance whatsoever, compounding the harm.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. severe GI tract nerve damage causing lifelong digestive failure, chronic vomiting (12+ times/day), and chronic diarrhea (15+ times/day) from 2019–2024;

2. permanent nerve damage in the right arm (weakness and chronic pain);

3. permanent nerve damage in the left arm (weakness and chronic pain);

4. severe allergic reactions and multiple recurring cyst formations in exposed skin;

5. chronic pain persisting to the present;

6. total destruction of quality of life, including emotional devastation, loss of independence, and inability to perform basic daily activities;

7. skin cancer discovered 2024/2025 in exposed areas;

8. permanent bilateral arm and GI nerve damage discovered late 2025/early 2026; and

9. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures.

g. The conduct set forth in paragraphs 69–72 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan

Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

74. As a direct and proximate result of the chained torts — including the malicious civil conspiracy that deliberately withheld every critical disclosure for years — Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative, injury-specific damages traceable to the injuries in subparagraph 73(f):

a. Compensatory Economic Damages: $155,700,000, consisting of:

    1. $15,000,000 for CRISPR gene-editing interventions;

    2. $5,000,000 for stem-cell therapy;

    3. $7,500,000 for specialized gastroenterological care, pain management, and nutritional support;

    4. $9,000,000 for bilateral arm nerve damage, allergic reactions, chronic pain, and recurring cysts;

    5. $6,000,000 for lost wages and permanent disability;

    6. $1,200,000 for reliance damages; and

    7. $12,000,000 for non-economic personal injury damages for pain, suffering, and emotional distress.

b. Restitution for Unjust Enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

c. Fraud Damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

d. Exemplary and Punitive Damages: $15,000,000 (apportioned 60% to Syngenta Crop Protection, LLC and 40% to Syngenta Corporation).

e. Statutory Damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

75. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort/continuing-violation doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

76. Prayer for Relief

a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

1. Compensatory damages of $155,700,000 (or greater as proven at trial), as established in paragraph 74 above.

2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 73(f) above.

3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $12,000,000 (or greater as proven at trial), as established in subparagraph 73(f) above.

4. Reliance damages of $1,200,000, as established in paragraphs 69(e) and 74(a)(vi) above.

5. Restitution damages of $100,000,000, as established in paragraph 74(b) above.

6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019, as established in paragraphs 69–70 above.

7. Exemplary and punitive damages of $15,000,000 (or greater as proven at trial), as established in paragraph 71 above.

8. Statutory damages as calculated in paragraph 74(e), as established in subparagraph 73(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Such other and further relief as the Court deems just and proper.

## COUNT IV

**Fraud, Malice, Breach of Implied Warranty of Merchantability and Fitness for Use, and Personal Injury (Under Common Law, Michigan Law, North Carolina Law, and Violations of Applicable Federal Statutes)**

77. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

78. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The specific, non-conclusory facts supplied herein make liability not merely conceivable but contextually probable.

79. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan

Road, Saginaw, Michigan 48601), every product container, every distributor/applicator communication, and all marketing materials submitted to the EPA.

80. Fraud (five elements under North Carolina and Michigan common law) directly satisfies and is expressly chained to every element of Malice (N.C. Gen. Stat. § 1D-5 and Michigan common law):

    a.  False representation or concealment of a material fact: Defendants affirmatively represented on the May 2019 label and every SDS that the only risks were minor and temporary while deliberately concealing permanent and life-altering risks of specific cancers (including skin cancer and non-Hodgkin lymphoma) and their precise biological mechanisms, specific causes of death (respiratory failure, organ failure, cancer mortality) and their exact physiological pathways, Chinese military ownership and control, the product's true status as an EPA-regulated pesticide rather than a mere "herbicide," incurability of the resulting neurotoxicity, endocrine disruption, and nerve damage, the common-law necessity doctrine ("Necessitas non habet legem"), and any specific drift-mitigation measures (as detailed in paragraphs 1–43).

    b.  Representation or concealment reasonably calculated to deceive: The omissions and misrepresentations appeared on every label, SDS, and marketing document immediately before Plaintiff's exposure.

c. Made with knowledge of falsity and intent to deceive: Defendants possessed internal studies showing the exact permanent injuries Plaintiff later suffered yet refused to update the label or SDS.

d. Which did in fact deceive: Plaintiff justifiably relied on the false representation that the product was safe when used as directed while living adjacent to active farmland.

e. Resulting in damages: The reliance caused the severe, permanent personal injuries detailed in subparagraph 83(f) below.

81. The Fraud elements above are expressly chained to and fully satisfy every statutory and common-law element of Malice. The same intentional misrepresentations, omissions, knowledge of catastrophic harms, profit-driven motive, and malicious refusal to amend despite internal studies demonstrate (1) a sense of personal ill will toward Plaintiff and (2) willful and wanton conduct in conscious or reckless disregard for the rights and safety of Plaintiff and the public.

82. The conduct establishing Fraud and Malice directly satisfies every element of Breach of Implied Warranty of Merchantability (MCL 440.2314) and Fitness for a Particular Purpose (MCL 440.2315):

a. Defendants impliedly warranted that Boundary® 6.5 EC was merchantable (of fair average quality and fit for the ordinary purposes for which such goods are used) and fit for its particular purpose (safe, effective use as a herbicide on

farmland adjacent to residential property without causing permanent human harm);

b. The product was in fact unmerchantable and unfit because it is toxic to humans, causes specific cancers and deaths through known biological mechanisms and physiological pathways, produces incurable neurotoxicity/endocrine/nerve damage, has no safe residential-adjacent use, and was knowingly mislabeled as a mere "herbicide" to evade pesticide regulations;

c. Plaintiff, as a foreseeable user/consumer, actually and justifiably relied on the implied warranties and the fraudulent label/SDS representations; and

d. The breach proximately caused the injuries detailed in subparagraphs 83(d)–(f) below. The upstream Fraud and Malice elements are expressly incorporated into the warranty claims because Defendants' actual knowledge of unfitness (from internal studies) and their intentional concealment of that unfitness render the implied warranties breached as a matter of law.

83. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

a. Duty: Defendants owed a duty to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers and mechanisms, causes of death and pathways, incurability,

necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins (regulatory duty under FIFRA plus common-law duty).

b. Breach: The chained intentional misrepresentations, omissions, malice, and breaches of the implied warranties in the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5 and render the product unreasonably dangerous.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 exposure and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The Fraud/Malice elements supply the "knew or should have known" knowledge component of § 99B-5; the warranty-breach elements establish that the product was unfit and unreasonably dangerous.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS (70% primary responsibility) and Syngenta Corporation's supervisory concealment, malicious agreement, and refusal to amend it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 exposure. Nutrien Ag Solutions' boom

sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures and a merchantable/fit product would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical help, guidance, or comprehension assistance whatsoever, compounding the harm.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. severe GI tract nerve damage causing lifelong digestive failure, chronic vomiting (12+ times/day), and chronic diarrhea (15+ times/day) from 2019–2024;

2. permanent nerve damage in the right arm (weakness and chronic pain);

3. permanent nerve damage in the left arm (weakness and chronic pain);

4. severe allergic reactions and multiple recurring cyst formations in exposed skin;

5. chronic pain persisting to the present;

6. total destruction of quality of life, including emotional devastation, loss of independence, and inability to perform basic daily activities;

7. skin cancer discovered 2024/2025 in exposed areas;

8. permanent bilateral arm and GI nerve damage discovered late 2025/early 2026; and

9. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures.

g. The conduct set forth in paragraphs 80–82 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

84. As a direct and proximate result of the chained torts — including the breach of every implied warranty of merchantability and fitness that rendered the product unfit and unreasonably dangerous — Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative, injury-specific damages traceable to the injuries in subparagraph 83(f):

a. Compensatory Economic Damages: $155,700,000, consisting of:

1. $15,000,000 for CRISPR gene-editing interventions;

2. $5,000,000 for stem-cell therapy;

3. $7,500,000 for specialized gastroenterological care, pain management, and nutritional support;

4. $9,000,000 for bilateral arm nerve damage, allergic reactions, chronic pain, and recurring cysts;

5. $6,000,000 for lost wages and permanent disability;

6. $1,200,000 for reliance damages; and

7. $12,000,000 for non-economic personal injury damages for pain, suffering, and emotional distress.

b. Restitution for Unjust Enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

c. Fraud Damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

d. Exemplary and Punitive Damages: $15,000,000 (apportioned 60% to Syngenta Crop Protection, LLC and 40% to Syngenta Corporation).

e. Statutory Damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

85. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort/continuing-violation doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury

of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

86. Prayer for Relief

    a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

      1. Compensatory damages of $155,700,000 (or greater as proven at trial), as established in paragraph 84 above.

      2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 83(f) above.

      3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $12,000,000 (or greater as proven at trial), as established in subparagraph 83(f) above.

      4. Reliance damages of $1,200,000, as established in paragraphs 80(e) and 84(a)(vi) above.

      5. Restitution damages of $100,000,000, as established in paragraph 84(b) above.

6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019, as established in paragraphs 80–81 above.

7. Exemplary and punitive damages of $15,000,000 (or greater as proven at trial), as established in paragraph 81 above.

8. Statutory damages as calculated in paragraph 84(e), as established in subparagraph 83(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Injunctive relief requiring

    i. immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, incurability, the necessity doctrine, specific cancers/deaths and mechanisms/pathways, and full EPA pesticide classification, and

    ii. an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff.

12. Such other and further relief as the Court deems just and proper.

# COUNT V

## Trespass (Chemical Trespass), Fraud, Malicious Intent, Negligence, and Personal Injury (Under Common Law, Michigan Law, North Carolina Law, and Violations of Applicable Federal Statutes)

87. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

88. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The specific, non-conclusory facts supplied herein make liability not merely conceivable but contextually probable.

89. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan Road, Saginaw, Michigan 48601), every product container, every

distributor/applicator communication, and all marketing materials submitted to the EPA.

90. Chemical Trespass (common-law elements under Michigan and North Carolina law) directly satisfies and is expressly chained to every element of Fraud (five elements under North Carolina and Michigan common law):

   a. Intentional or negligent physical invasion of Plaintiff's land and body: Defendants designed, formulated, manufactured, and distributed Boundary® 6.5 EC with actual knowledge of its high volatility and long-distance drift propensity, causing the unauthorized entry of S-metolachlor and metribuzin onto Plaintiff's property and into his body on May 19, 2019 (exact time, wind speed, applicator speed, drift height/distance, and physical plume details are set forth in paragraphs 1–43).

   b. Without consent or privilege: The invasion occurred while Plaintiff was on his own residential property with no consent or legal privilege.

   c. Resulting in harm: The chemical physically contaminated Plaintiff's land and caused the personal injuries detailed in subparagraph 93(f) below.

   d. Proximate causation: The invasion was the direct and proximate result of Defendants' conduct.

   e. Damages: Plaintiff suffered the severe, permanent injuries listed in subparagraph 93(f) below.

90.2 Each of the five Chemical Trespass elements above is expressly chained to and fully satisfies every element of Fraud because the same physical invasion was enabled by Defendants' affirmative misrepresentations and deliberate concealments on the label and SDS (that the only risks were minor and temporary while hiding drift danger, specific cancers and mechanisms, causes of death and pathways, military ownership, pesticide status, incurability, necessity doctrine, and mitigation measures): (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with knowledge of falsity and intent to deceive, (4) which did in fact deceive Plaintiff (who justifiably relied on the false representation that the product was safe), and (5) resulting in damages.

91. The conduct establishing Chemical Trespass and Fraud directly establishes every element of Malicious Intent (N.C. Gen. Stat. § 1D-5 and Michigan common law). The intentional design and distribution of a known volatile product, combined with the coordinated misrepresentations and omissions despite internal knowledge of the exact harms, demonstrate (1) a sense of personal ill will or deliberate disregard for human life and (2) willful and wanton conduct in conscious or reckless disregard for Plaintiff's rights and safety.

92. The same conduct further satisfies every element of Negligence (original/common-law negligence under Michigan and North Carolina law):

a. Defendants owed Plaintiff, as a foreseeable residential neighbor, a duty of reasonable care to prevent foreseeable chemical drift and to provide accurate safety information;

b. Defendants breached that duty through the design, manufacture, distribution, misrepresentations, omissions, and refusal to amend;

c. The breach was the proximate cause of the May 19, 2019 chemical trespass and injuries (detailed in subparagraphs 93(e)–(f) below); and

d. Plaintiff suffered the damages detailed in subparagraph 93(f) below. The upstream Chemical Trespass, Fraud, and Malicious Intent elements supply the actual knowledge that renders the negligence particularly egregious.

93. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

a. Duty: Defendants owed a duty to prevent hazardous substances from invading another's land or body and to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers and mechanisms, causes of death and pathways, incurability, necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins (regulatory duty under FIFRA plus common-law duty).

b. Breach: The chained intentional misrepresentations, omissions, malice, negligence, and physical invasion in the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5 and render the product unreasonably dangerous.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 chemical trespass and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The Chemical Trespass/Fraud/Malice elements supply the "knew or should have known" knowledge component of § 99B-5 and the physical invasion; the negligence elements supply the ordinary-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS and negligent manufacture/distribution of the volatile product (70% primary responsibility) and Syngenta Corporation's supervisory concealment, malicious agreement, and refusal to amend it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 chemical trespass and exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet

onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures and proper drift prevention would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical help, guidance, or comprehension assistance whatsoever, compounding the harm.

f.  Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. severe GI tract nerve damage causing lifelong digestive failure, chronic vomiting (12+ times/day), and chronic diarrhea (15+ times/day) from 2019–2024;

2. permanent nerve damage in the right arm (weakness and chronic pain);

3. permanent nerve damage in the left arm (weakness and chronic pain);

4. severe allergic reactions and multiple recurring cyst formations in exposed skin;

5. chronic pain persisting to the present;

6. total destruction of quality of life, including emotional devastation, loss of independence, and inability to perform basic daily activities;

7. skin cancer discovered 2024/2025 in exposed areas;

8. permanent bilateral arm and GI nerve damage discovered late 2025/early 2026; and

9. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures.

g. The conduct set forth in paragraphs 90–92 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

94. **Deepened FIFRA Preemption Analysis – Why This Chemical Trespass Claim Survives Preemption in Full** Defendants will predictably move to dismiss this entire Fifth Cause of Action under FIFRA's express preemption clause, 7 U.S.C. § 136v(b). This claim is not preempted. In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court held that § 136v(b) preempts only state-law labeling requirements that are "in addition to or different from" FIFRA's. Chemical trespass is the quintessential traditional common-law property tort that *Bates* expressly preserved: it arises from the physical fact of unauthorized entry (the visible 40-foot-high plume, the precise 100-foot southward travel, the exact time and wind conditions), not from any demand for different label language. Post-

*Bates* decisions confirm that drift-based trespass claims survive precisely because they enforce independent common-law property and personal-injury duties. The fraud, malice, and negligence theories are pled only to supply duty, breach, and scienter for the trespass itself— not as independent labeling claims. The Supreme Court's pending review in *Monsanto Co. v. Durnell* (No. 24-1068) does not reach a pure physical-invasion tort. FIFRA was never intended to grant pesticide manufacturers a license to commit chemical trespass with impunity. The claim therefore survives preemption in its entirety.

95. As a direct and proximate result of the chained torts — including the physical chemical trespass enabled by fraud, malice, and negligence — Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative, injury-specific damages traceable to the injuries in subparagraph 93(f):

   a. Compensatory Economic Damages: $155,700,000, consisting of:

      1. $15,000,000 for CRISPR gene-editing interventions;

      2. $5,000,000 for stem-cell therapy;

      3. $7,500,000 for specialized gastroenterological care, pain management, and nutritional support;

      4. $9,000,000 for bilateral arm nerve damage, allergic reactions, chronic pain, and recurring cysts;

5. $6,000,000 for lost wages and permanent disability;

6. $1,200,000 for reliance damages; and vii. $12,000,000 for non-economic personal injury damages for pain, suffering, and emotional distress.

b. Restitution for Unjust Enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

c. Fraud Damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

d. Punitive and Exemplary Damages: $25,000,000 (apportioned 70% to Syngenta Crop Protection, LLC and 30% to Syngenta Corporation).

e. Statutory Damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

96. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort/continuing-violation doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

97. Prayer for Relief

a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

1. Compensatory damages of $155,700,000 (or greater as proven at trial), as established in paragraph 95 above.

2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 93(f) above.

3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $12,000,000 (or greater as proven at trial), as established in subparagraph 93(f) above.

4. Reliance damages of $1,200,000, as established in paragraphs 90(e) and 95(a)(vi) above.

5. Restitution damages of $100,000,000, as established in paragraph 95(b) above.

6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019, as established in paragraphs 90–91 above.

7. Punitive and exemplary damages of $25,000,000 (or greater as proven at trial), as established in paragraph 91 above.

8. Statutory damages as calculated in paragraph 95(e), as established in subparagraph 93(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Injunctive relief requiring (1) immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, incurability, the necessity doctrine, specific cancers/deaths and mechanisms/pathways, and full EPA pesticide classification, (2) an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff, and (3) cessation of all sales of Boundary® 6.5 EC until full compliance.

12. Such other and further relief as the Court deems just and proper.

## COUNT VI

## Private Nuisance, Fraud, Malicious Intent, Negligence, and Personal Injury

## (Under Common Law, Michigan Law, North Carolina Law, and Violations of

## Applicable Federal Statutes)

98. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

99. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The specific, non-conclusory facts supplied herein make liability not merely conceivable but contextually probable.

100. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan Road, Saginaw, Michigan 48601), every product

container, every distributor/applicator communication, and all marketing materials submitted to the EPA.

101. Private Nuisance (common-law elements under Michigan and North Carolina law) directly satisfies and is expressly chained to every element of Fraud (five elements under North Carolina and Michigan common law):

a. Unreasonable and substantial interference with Plaintiff's use and enjoyment of land: Defendants designed, formulated, manufactured, and distributed Boundary® 6.5 EC with actual knowledge of its high volatility and long-distance drift propensity, causing the ongoing unreasonable interference with Plaintiff's residential property and bodily integrity on and after May 19, 2019 (exact time, wind speed, applicator speed, drift height/distance, and physical plume details are set forth in paragraphs 1–43).

b. The interference was substantial and unreasonable: The chemical plume directly enveloped and drenched Plaintiff's land and body, creating permanent contamination and health effects.

c. Caused by Defendants' conduct: The interference resulted from Defendants' knowing design, manufacture, distribution, and failure to prevent foreseeable drift.

d. Without consent or privilege: The interference occurred while Plaintiff was on his own residential property with no consent or legal privilege.

e. Resulting in harm and damages: The interference caused the personal injuries detailed in subparagraph 104(f) below.

101.2 Each of the five Private Nuisance elements above is expressly chained to and fully satisfies every element of Fraud because the same unreasonable interference was enabled by Defendants' affirmative misrepresentations and deliberate concealments on the label and SDS (that the only risks were minor and temporary while hiding drift danger, specific cancers and mechanisms, causes of death and pathways, military ownership, pesticide status, incurability, necessity doctrine, and mitigation measures): (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with knowledge of falsity and intent to deceive, (4) which did in fact deceive Plaintiff (who justifiably relied on the false representation that the product was safe), and (5) resulting in damages.

102. The conduct establishing Private Nuisance and Fraud directly establishes every element of Malicious Intent (N.C. Gen. Stat. § 1D-5 and Michigan common law). The intentional design and distribution of a known volatile product, combined with the coordinated misrepresentations and omissions despite internal knowledge of the exact harms, demonstrate (1) a sense of personal ill will or deliberate disregard for human life and (2) willful and wanton conduct in conscious or reckless disregard for Plaintiff's rights and safety.

103. The same conduct further satisfies every element of Negligence (original/common-law negligence under Michigan and North Carolina law):

   a. Defendants owed Plaintiff, as a foreseeable residential neighbor, a duty of reasonable care to prevent foreseeable chemical drift and to provide accurate safety information;

   b. Defendants breached that duty through the design, manufacture, distribution, misrepresentations, omissions, and refusal to amend;

   c. The breach was the proximate cause of the May 19, 2019 private nuisance and injuries (detailed in subparagraphs 104(e)–(f) below); and

   d. Plaintiff suffered the damages detailed in subparagraph 104(f) below. The upstream Private Nuisance, Fraud, and Malicious Intent elements supply the actual knowledge that renders the negligence particularly egregious.

104. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

   a. Duty: Defendants owed a duty not to create or maintain an unreasonable interference with another's use and enjoyment of land, to prevent hazardous substances from invading another's land or body, and to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers and mechanisms, causes of death

and pathways, incurability, necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins (regulatory duty under FIFRA plus common-law duty).

b. Breach: The chained intentional misrepresentations, omissions, malice, negligence, and unreasonable interference in the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5 and render the product unreasonably dangerous.

c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 private nuisance and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The Private Nuisance/Fraud/Malice elements supply the "knew or should have known" knowledge component of § 99B-5 and the unreasonable interference; the negligence elements supply the ordinary-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS and negligent manufacture/distribution of the volatile product (70% primary responsibility) and Syngenta Corporation's supervisory concealment, malicious agreement, and refusal to amend it (30% responsibility) were the but-for and proximate

causes of the May 19, 2019 private nuisance and exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures and proper drift prevention would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical help, guidance, or comprehension assistance whatsoever, compounding the harm.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. severe GI tract nerve damage causing lifelong digestive failure, chronic vomiting (12+ times/day), and chronic diarrhea (15+ times/day) from 2019–2024;

2. permanent nerve damage in the right arm (weakness and chronic pain);

3. permanent nerve damage in the left arm (weakness and chronic pain);

4. severe allergic reactions and multiple recurring cyst formations in exposed skin;

5. chronic pain persisting to the present;

6. total destruction of quality of life, including emotional devastation, loss of independence, and inability to perform basic daily activities;

7. skin cancer discovered 2024/2025 in exposed areas;

8. permanent bilateral arm and GI nerve damage discovered late 2025/early 2026; and

9. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures.

g. The conduct set forth in paragraphs 101–103 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

105. As a direct and proximate result of the chained torts — including the unreasonable private nuisance enabled by fraud, malice, and negligence — Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative, injury-specific damages traceable to the injuries in subparagraph 104(f):

a. Compensatory Economic Damages: $155,700,000, consisting of: i. $15,000,000 for CRISPR gene-editing interventions; ii. $5,000,000 for stem-cell therapy; iii. $7,500,000 for specialized gastroenterological care, pain management, and nutritional support; iv. $9,000,000 for bilateral arm nerve damage, allergic reactions, chronic pain, and recurring cysts; v. $6,000,000 for lost wages and permanent disability; vi. $1,200,000 for reliance damages; and vii. $12,000,000 for non-economic personal injury damages for pain, suffering, and emotional distress.

b. Restitution for Unjust Enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

c. Fraud Damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

d. Punitive and Exemplary Damages: $25,000,000 (apportioned 70% to Syngenta Crop Protection, LLC and 30% to Syngenta Corporation).

e. Statutory Damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

106. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort/continuing-violation doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury

of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

107. Prayer for Relief

a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

1. Compensatory damages of $155,700,000 (or greater as proven at trial), as established in paragraph 105 above.

2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 104(f) above.

3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $12,000,000 (or greater as proven at trial), as established in subparagraph 104(f) above.

4. Reliance damages of $1,200,000, as established in paragraphs 101(e) and 105(a)(vi) above.

5. Restitution damages of $100,000,000, as established in paragraph 105(b) above.

6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019, as established in paragraphs 101–102 above.

7. Punitive and exemplary damages of $25,000,000 (or greater as proven at trial), as established in paragraph 102 above.

8. Statutory damages as calculated in paragraph 105(e), as established in subparagraph 104(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Injunctive relief requiring (1) immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, incurability, the necessity doctrine, specific cancers/deaths and mechanisms/pathways, and full EPA pesticide classification, (2) an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff, and (3) cessation of all sales of Boundary® 6.5 EC until full compliance.

12. Such other and further relief as the Court deems just and proper.

## COUNT VII

## Negligent Design, Fraud, Malicious Intent, Negligence, and Personal Injury

## (Under Common Law, Michigan Law, North Carolina Law, and Violations of

## Applicable Federal Statutes)

108. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

109. These allegations satisfy the plausibility pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The specific, non-conclusory facts supplied herein — pleaded with full 5W1H particularity (Who: Syngenta Crop Protection, LLC and Syngenta Corporation; What: negligent design of a highly volatile product plus fraudulent misrepresentations and omissions; When: design process before and after the 2017 ChemChina acquisition, May 2019 label amendment, and every SDS before/after; Where: Greensboro, North Carolina headquarters, manufacturing sites, Nutrien Ag Solutions boom sprayer, and Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601; Why: profit-driven concealment of military ties and catastrophic harms; How: through defective volatile formulation, fraudulent labeling, coordinated refusal to amend, and physical drift invasion) — make liability not merely conceivable but contextually probable.

110. Defendants Syngenta Crop Protection, LLC (the North Carolina-based designer, formulator, manufacturer, and nationwide distributor that physically authored and submitted the May 2019 label amendment from its Greensboro headquarters) and Syngenta Corporation (the Delaware-formed owner and directing mind that knowingly suppressed safety data for profit after the 2017 ChemChina acquisition) committed the torts described below through the exact same conduct on the May 2019 amended label, every SDS (including the version dated March 31, 2023 that reached Nutrien Ag Solutions and was available to Plaintiff at 2070 Houlihan Road, Saginaw, Michigan 48601), every product container, every distributor/applicator communication, and all marketing materials submitted to the EPA.

111. Negligent Design (common-law elements under Michigan and North Carolina law) directly satisfies and is expressly chained to every element of Fraud (five elements under North Carolina and Michigan common law):

a. Duty to design a reasonably safe product for its foreseeable uses (including residential-adjacent farmland): Defendants owed a duty to design Boundary® 6.5 EC so that it would not be highly volatile or prone to long-distance drift that would invade neighboring property or harm humans.

b. Breach of that duty: Defendants negligently designed the product to be unreasonably dangerous because of its extreme volatility, uncontrollable

drift propensity, and failure to incorporate any safe-use engineering for residential proximity (as detailed in paragraphs 1–43).

c. Proximate causation: The defective design directly and proximately caused the May 19, 2019 exposure and injuries (detailed in subparagraphs 114(e)–(f) below).

d. Resulting harm: The defective design caused the personal injuries detailed in subparagraph 114(f) below.

e. Damages: Plaintiff suffered the severe, permanent injuries listed in subparagraph 114(f) below.

111.2 Each of the five Negligent Design elements above is expressly chained to and fully satisfies every element of Fraud because the same defective design was enabled and concealed by Defendants' affirmative misrepresentations and deliberate omissions on the label and SDS (that the only risks were minor and temporary while hiding drift danger, specific cancers and mechanisms, causes of death and pathways, military ownership, pesticide status, incurability, necessity doctrine, and mitigation measures): (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with knowledge of falsity and intent to deceive, (4) which did in fact deceive Plaintiff (who justifiably relied on the false representation that the product was safe), and (5) resulting in damages.

112. The conduct establishing Negligent Design and Fraud directly establishes every element of Malicious Intent (N.C. Gen. Stat. § 1D-5 and Michigan common law). The intentional design of a known volatile and drift-prone product, combined with the coordinated misrepresentations and omissions despite internal knowledge of the exact harms, demonstrate (1) a sense of personal ill will or deliberate disregard for human life and (2) willful and wanton conduct in conscious or reckless disregard for Plaintiff's rights and safety.

113. The same conduct further satisfies every element of Negligence (original/common-law negligence under Michigan and North Carolina law):

   a. Defendants owed Plaintiff, as a foreseeable residential neighbor, a duty of reasonable care to design a safe product, prevent foreseeable chemical drift, and provide accurate safety information;

   b. Defendants breached that duty through the defective design, manufacture, distribution, misrepresentations, omissions, and refusal to amend;

   c. The breach was the proximate cause of the May 19, 2019 exposure and injuries (detailed in subparagraphs 114(e)–(f) below); and

   d. Plaintiff suffered the damages detailed in subparagraph 114(f) below. The upstream Negligent Design, Fraud, and Malicious Intent elements supply the actual knowledge that renders the negligence particularly egregious.

114. The chained torts further establish every element of Personal Injury as an independent tort and under Product Liability (N.C. Gen. Stat. Chapter 99B § 99B-5 inadequate-warning claim and common-law negligence):

   a. Duty: Defendants owed a duty to design a reasonably safe product that could be used without drifting onto neighboring land or bodies and to provide accurate, complete, non-misleading labeling, warnings, and disclosures regarding all known risks (including specific cancers and mechanisms, causes of death and pathways, incurability, necessity doctrine, and drift-mitigation measures), proper EPA pesticide classification, and corporate/military origins (regulatory duty under FIFRA plus common-law duty).

   b. Breach: The chained defective design, intentional misrepresentations, omissions, malice, and negligence in the May 2019 label/SDS (plus ongoing concealment) constitute an unreasonable failure to warn under § 99B-5 and render the product unreasonably dangerous.

   c. Causation: The breach was the but-for and proximate cause of the May 19, 2019 exposure and resulting injuries (detailed in subparagraphs (e) and (f) of this paragraph).

   d. Damages: Plaintiff suffered the severe, permanent personal injuries detailed in subparagraph (f) of this paragraph. The Negligent Design/Fraud/Malice

elements supply the "knew or should have known" knowledge component of § 99B-5 and the inherent defect; the negligence elements supply the ordinary-negligence prong.

e. Defendant-Specific Proximate Causation: Syngenta Crop Protection, LLC's direct authorship of the fraudulent May 2019 label/SDS and negligent manufacture/distribution of the volatile product (70% primary responsibility) and Syngenta Corporation's supervisory concealment, malicious agreement, and refusal to amend it (30% responsibility) were the but-for and proximate causes of the May 19, 2019 exposure. Nutrien Ag Solutions' boom sprayer (north-to-south at 30 mph) released Boundary® 6.5 EC under 6 mph NNW wind at 10:30 a.m., sending 40-foot-high drifts 100 feet onto Plaintiff's property at 2070 Houlihan Road, Saginaw, Michigan 48601. This caused dermal/inhalation absorption of S-metolachlor and metribuzin that accurate, complete disclosures and a non-defective product would have prevented — and, because of the ongoing concealment and refusal to amend, Defendants provided Plaintiff no medical help, guidance, or comprehension assistance whatsoever, compounding the harm.

f. Specific Personal Injuries Directly and Proximately Caused: The chained torts caused the following severe, permanent, and life-altering injuries:

1. severe GI tract nerve damage causing lifelong digestive failure, chronic vomiting (12+ times/day), and chronic diarrhea (15+ times/day) from 2019–2024;

2. permanent nerve damage in the right arm (weakness and chronic pain);

3. permanent nerve damage in the left arm (weakness and chronic pain);

4. severe allergic reactions and multiple recurring cyst formations in exposed skin;

5. chronic pain persisting to the present;

6. total destruction of quality of life, including emotional devastation, loss of independence, and inability to perform basic daily activities;

7. skin cancer discovered 2024/2025 in exposed areas;

8. permanent bilateral arm and GI nerve damage discovered late 2025/early 2026; and

9. the additional personal injury of receiving no help from Defendants for medical help or comprehension due to their malicious refusal to amend the SDS and disclose incurability, necessity doctrine, and mitigation measures.

g. The conduct set forth in paragraphs 111–113 violated (and continues to violate) FIFRA (7 U.S.C. § 136j, § 136l), 40 C.F.R. § 156.10, N.C. Gen. Stat. § 75-1.1, Chapter 99B, § 143-442, § 106-65.33, § 1D-1 et seq., and the

Michigan Consumer Protection Act (MCL 445.901 et seq.), supplying independent bases for liability and enhanced damages.

115. **Deepened FIFRA Preemption Analysis – Why This Negligent Design Claim Survives Preemption in Full,** Defendants will predictably move to dismiss this entire Seventh Cause of Action under FIFRA's express preemption clause, 7 U.S.C. § 136v(b). This negligent-design claim is not preempted. In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Supreme Court expressly preserved design-defect claims. Negligent design is the quintessential traditional common-law tort that *Bates* preserved: it arises from the physical formulation of the product itself — the high volatility and uncontrollable drift propensity of Boundary® 6.5 EC that made it unreasonably dangerous for foreseeable residential use near trees, persons, or public airspace. The claim is proven by objective, observable evidence completely independent of the label: the visible 40-foot-high plume, the precise 100-foot southward travel under documented 6 mph NNW wind, the exact time (10:30 a.m.), and the resulting dermal/inhalation absorption. Post-*Bates* decisions confirm that design-defect claims routinely survive FIFRA preemption. The fraud and malice elements are pled only to supply scienter and duty for the design claim — not as independent labeling claims. The Supreme Court's pending review in *Monsanto Co. v. Durnell* (No. 24-1068) does not reach a pure design-defect tort. FIFRA was never intended to

grant pesticide manufacturers immunity from liability for negligently designing an unreasonably dangerous product. The claim therefore survives preemption in its entirety.

116. As a direct and proximate result of the chained torts — including the defective design enabled by fraud, malice, and negligence — Plaintiff is entitled to recover from both Defendants, jointly and severally (Syngenta Crop Protection, LLC — 70%; Syngenta Corporation — 30%), the following non-speculative, injury-specific damages traceable to the injuries in subparagraph 114(f):

   a. Compensatory Economic Damages: $155,700,000, consisting of: i. $15,000,000 for CRISPR gene-editing interventions; ii. $5,000,000 for stem-cell therapy; iii. $7,500,000 for specialized gastroenterological care, pain management, and nutritional support; iv. $9,000,000 for bilateral arm nerve damage, allergic reactions, chronic pain, and recurring cysts; v. $6,000,000 for lost wages and permanent disability; vi. $1,200,000 for reliance damages; and vii. $12,000,000 for non-economic personal injury damages for pain, suffering, and emotional distress.

   b. Restitution for Unjust Enrichment: $100,000,000 (Defendants' proportionate share of profits from continued fraudulent sales).

   c. Fraud Damages: two times (2×) all compensatory damages plus 3% interest compounded monthly from May 19, 2019.

d. Punitive and Exemplary Damages: $25,000,000 (apportioned 70% to Syngenta Crop Protection, LLC and 30% to Syngenta Corporation).

e. Statutory Damages: $75,000 per federal statute violated; $80,000 per CFR provision; $26,000 per North Carolina or Michigan statute.

117. All claims are timely under Michigan's insanity tolling (MCL § 600.5851), North Carolina's disability tolling (N.C. Gen. Stat. § 1-17), the discovery rule, continuing-tort/continuing-violation doctrine, and federal equitable tolling, given five years of mental derangement from unrelenting pain and the additional injury of receiving no help from Defendants (preventing comprehension of rights) plus latent injuries (skin cancer 2024/2025; permanent nerve damage late 2025/early 2026) not reasonably discoverable earlier.

118. Prayer for Relief

a. WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the following relief:

1. Compensatory damages of $155,700,000 (or greater as proven at trial), as established in paragraph 116 above.

2. Personal injury damages of $15,000,000 (or greater as proven at trial), as established in subparagraph 114(f) above.

3. Emotional distress, mental anguish, humiliation, loss of dignity, loss of enjoyment of life, and secondary trauma damages of $12,000,000 (or greater as proven at trial), as established in subparagraph 114(f) above.

4. Reliance damages of $1,200,000, as established in paragraphs 111(e) and 116(a)(vi) above.

5. Restitution damages of $100,000,000, as established in paragraph 116(b) above.

6. Fraud damages at two times (2×) all compensatory damages plus 3% compounded interest from May 19, 2019, as established in paragraphs 111–112 above.

7. Punitive and exemplary damages of $25,000,000 (or greater as proven at trial), as established in paragraph 112 above.

8. Statutory damages as calculated in paragraph 116(e), as established in subparagraph 114(g) above.

9. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019.

10. Costs, expert fees, and attorney fees as allowed by law.

11. Injunctive relief requiring (1) immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, incurability, the necessity doctrine, specific cancers/deaths and

mechanisms/pathways, and full EPA pesticide classification, (2) an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff, and (3) reformulation or cessation of any product not designed for safe use near residential trees, persons, or public airspace.

12. Such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

119. **WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants Syngenta Crop Protection, LLC and Syngenta Corporation, jointly and severally (with the 70%/30% apportionment set forth above), and award the relief prayed for in the Prayer for Relief sections of **Counts I, II, III, IV, V, VI, and VII**, including without limitation:

a. All compensatory damages, personal injury damages, emotional distress and related non-economic damages, reliance damages, restitution damages, fraud damages (at $2\times$ compensatory plus 3% compounded interest from May 19, 2019, or treble where applicable), punitive and exemplary damages (including up to $25,000,000 or greater as proven in Counts V, VI, and VII), and statutory damages as specifically requested and justified in each Count;

b. Pre- and post-judgment interest at the highest lawful rate from May 19, 2019;

c. Costs, expert fees, and attorney fees as allowed by law;

d. Injunctive relief requiring (1) immediate label and SDS amendments disclosing all permanent risks, military-creation and ownership ties, incurability, the necessity doctrine, specific cancers/deaths and mechanisms/pathways, and full EPA pesticide classification, (2) an order for Defendants to provide medical guidance and comprehension assistance to Plaintiff, and (3) reformulation or cessation of any product not designed for safe use near residential trees, persons, or public airspace (or, as applicable in Counts V and VI, cessation of all sales of Boundary® 6.5 EC until full compliance), as detailed across the Counts; and

e. Such other and further relief as the Court deems just and proper.

/s/ Patrick-Joseph: Groulx
Patrick-Joseph: Groulx (P00000)
In Propria Persona
2070 Houlihan Road
Saginaw Michigan 48601
989 860-2550
4708nogardnep@gmail.com

Date: May 23, 2026